UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRYAN GIVENS and wife, EMILY GIVENS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 3:13-cv-00300 |
| v. ) | Judge Aleta A. Trauger |
| ) | |
| BATAVIA SERVICES, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

The plaintiffs, Bryan Givens and his wife Emily Givens (the "Givens"), have filed a Motion to Remand (Docket No. 7), to which the defendant, Batavia Services, Inc. ("Batavia"), filed a Response in opposition (Docket No. 9).[1] For the reasons stated herein, the Givens' Motion to Remand will be denied.

## BACKGROUND

The Givens originally filed their Complaint in Tennessee state court, which they amended as of right. (*See* Docket No. 1, Ex. A. at pp. 1-5 (Complaint) and 7-11 (Amended Complaint).) The Amended Complaint alleges that Mr. Givens, who is a Tennessee resident, was injured while working for his employer, United Global Services ("UGS"), at a site in Rutherford County, Tennessee. The injury occurred when a ladder provided to him by UGS malfunctioned, causing him to fall approximately 24 feet. He alleges that, as a result of the fall, he suffered permanently disabling injuries to his neck, spine, and shoulders. After suffering this

---

[1] The plaintiffs voluntarily dismissed an additional defendant, Batavia, Inc., pursuant to Fed. R. Civ. P. 41(a)(1)(A) before filing their Motion to Remand. (Docket No. 5).

1

injury, Givens received workers' compensation benefits from UGS under the Tennessee Workers' Compensation Law ("TWCL"), Tenn. Code Ann. § 50-6-101 *et seq.*, including medical benefits under § 50-6-204 and temporary total disability benefits under § 50-6-207(1).[2]

According to the Amended Complaint, Batavia is an out-of-state ladder repair company that, under a contract with UGS, negligently performed "repairs" on the ladder before it malfunctioned.[3] The Givens allege that Batavia is legally responsible for Mr. Givens' injuries, because (1) Batavia failed its duty of reasonable care in handling repairs of the ladder, (2) its actions rendered the ladder unreasonably dangerous and defective, and/or (3) it failed to warn or instruct UGS and Mr. Givens of the risks and hazards occasioned by Batavia's "repairs." Mr. Givens seeks compensatory damages for pain and suffering, loss of enjoyment of life, lost wages and lost opportunity to earn income, and medical treatment expenses. Ms. Givens claims loss of consortium.

The Amended Complaint states that the Givens' claims are "authorized by" TWCL § 50-6-112(a) and, therefore, "arise under" the TWCL. (Am. Compl. ¶ 15.) The Amended Complaint also states that "the Court that ultimately adjudicates this case will be called upon to interpret and apply various provisions of the [TWCL], including T.C.A. § 50-6-112." (Am. Compl. ¶

---

[2]Although not stated in the Amended Complaint, the court presumes that Mr. Givens recovered workers' compensation from UGS or from UGS's insurance carrier. For purposes of linguistic simplicity only, the court will assume that Mr. Givens recovered "from UGS."

[3]According to the Amended Complaint, Batavia is a "non-Tennessee corporation[]." (Am. Compl. ¶ 2.) The Amended Complaint does not state where Batavia is incorporated and/or maintains a principal place of business, although it does state that Batavia's registered agent for service of process is located in Delaware. In the Notice of Removal, Batavia states that it maintains a "home office" in Texas. The Givens do not dispute Batavia's representation and concede that Batavia is diverse. Therefore, for purposes of the instant motion, the court will assume that Batavia is a citizen of Texas and that the parties are diverse.

16.)[4]

On April 4, 2013, Batavia removed the case to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (Docket No. 1.) In their Motion to Remand, the Givens do not dispute that § 1332 is otherwise satisfied, but they argue that the case should nevertheless be remanded under 28 U.S.C. § 1445(c), which provides that cases "arising under the workmen's compensation law of [a] State may not be removed to any district court of the United States."

## ANALYSIS

**I.     Applicable Law**

    **A.     General Principles**

When ruling on a motion to remand, a court generally looks to the plaintiff's complaint, as it is stated at the time of removal, and the defendant's notice of removal. *Gentek Bldg. Prods, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

Typically, where a case satisfies the diversity jurisdiction requirements of 28 U.S.C. § 1331, a federal court has original jurisdiction and, under § 1441, the defendant may remove the case to federal court if it was originally filed in state court. However, 28 U.S.C. § 1445(c) prohibits the removal of certain categories of cases that would otherwise be removable under § 1441, including cases "arising under the workmen's compensation law of [a] State . . . ." 28 U.S.C. § 1445(c). Here, the parties dispute whether Tennessee tort claims brought by an injured employee against a responsible party (other than the employer) are claims "arising under" the TWCL for purposes of § 1445(c). If they are, removal was improper and the case must be

---

[4]Paragraphs 15 and 16 of the Amended Complaint state legal conclusions, which the court is not obligated to assume as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

3

remanded to Tennessee court.

"[R]emoval statutes . . . are intended to have uniform nationwide application." *Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 705, 92 S. Ct. 1344, 1349, 31 L. Ed. 2d 612 (1972). Therefore, federal law governs the interpretation of removal statutes, *id.*, including § 1445(c). *See Harper Autoalliance Int'l, Inc.*, 392 F.2d 195, 202 (6th Cir. 2004) (federal law criteria governs whether Tennessee tort claim falls within § 1445(c)); *see also Arthur v. E.I. Dupont de Nemours & Co.*, 58 F.3d 121, 125 (4th Cir. 1995); *Spearman v. Exxon Coal USA, Inc.*, 16 F.3d 722, 724 (7th Cir. 1994). Accordingly, a federal removal statute such as § 1445(c) "must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits" may not be removed. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104, 61 S. Ct. 868, 870, 85 L. Ed. 1214 (1941). In keeping with this principle, a state cannot by definition or characterization enlarge or narrow the category of cases subject to removal. *Arthur*, 58 F.3d at 125. States cannot prevent removal of ordinary tort cases by labeling them as a "workers' compensation law," nor can they expand federal jurisdiction by calling a claim arising under its workers' compensation laws an independent tort. *See Arthur*, 58 F.3d at 125.

**B.     28 U.S.C. § 1445(c)**

The Sixth Circuit has held that the phrase "arising under" in § 1445(c) has essentially the same meaning as the phrase "arising under" in the federal question statute, 28 U.S.C. § 1331. *Harper*, 392 F.3d at 202-203 ("When interpreting § 1445(c), we are guided by the fact that Congress invoked the identical 'arising under' language when it enacted the federal question jurisdiction statute . . . ."). Therefore, under § 1445(c), "a civil action arises under a state workmen's compensation law when either (1) the workmen's compensation law created the

4

cause of action or (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of workmen's compensation law." *Id.* at 203.[5]

In 1958, when § 1445(c) was enacted, "the typical state [workers' compensation act] included the following features: (1) negligence and fault of the employer and employee were immaterial to recover; (2) common law suits against the employer were barred; (3) medical expenses were capped at a percentage of the employee's wage, (4) an administrative agency ran the system with relaxed rules of procedure to facilitate prompt compensation, and (5) state court review of agency decisions occurred on a deferential basis." *Harper*, 392 F.3d at 207 n.4 (quoting *Arthur*, 58 F.3d at 125).[6] Congress enacted § 1445(c) in part to reduce congestion in the federal courts due to the removal of cases originally filed in state court under workers' compensation acts. *See id.* at 208 (citing *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 81 S. Ct. 1570 (1961)). Also, "the Senate Report on the amendment evidenced a concern not only about the problem of congestion in the federal courts, but also about the trial burdens that claimants might suffer by having to go to trial in federal rather than state courts due to the fact that state courts are likely to be closer to an injured workers' home and may also provide him with special procedural advantages in workers' compensation cases." *Horton*, 367 U.S. at 351-352.

Against this backdrop, the Sixth Circuit in *Harper* considered whether a workers' compensation retaliatory discharge claim constituted a claim "arising under" Michigan's workers' compensation laws for purposes of § 1445(c). There, a Michigan worker alleged that,

---

[5]Here, the Givens do not argue that their tort claims against Batavia are themselves "workmen's compensation laws" – which they are clearly not. Instead, the Givens argue that the claims "arise under" the TWCL.

[6]As discussed further herein, the TWCL is consistent with that original outline of workers' compensation laws.

5

after he sought workers' compensation benefits from his employer, the employer retaliated against him by discharging him. 392 F.3d at 198. The Michigan workers' compensation statute contained a provision stating that it was unlawful to discriminate against a worker for filing a workers' compensation claim, but the statute provided no means to enforce the right and provided no remedy for its violation. *Id.* at 203. The Sixth Circuit found that, for purposes of § 1445(c), the retaliation claim was not a "workmen's compensation law" and, despite its codification, did not "arise under" the Michigan workers' compensation statute. *See id.* at 202-208.

With respect to the issue of "arising under" jurisdiction, the Sixth Circuit identified a number of relevant factors demonstrating that removal was proper. The court observed that, before the retaliatory discharge claim was codified, Michigan courts had already recognized anti-retaliation claims in violation of public policy, including (among other contexts) retaliatory discharges for filing workers' compensation claims. *Id.* at 203-204. Thus, "the common law right to be free from retaliatory discharge does not arise under Michigan's workers' compensation statute, but is merely reflected in it." *Id.* at 205. Also, the court observed that the retaliation claim "does not necessarily depend on resolution of a substantial question under that statute," because it "does not implicate the administrative or remedial mechanisms of that statutory scheme, require courts to interpret the statute, or seek an award of compensation for personal injury that causes a diminished wage-earning capacity, which is the only type of compensation the statute affords." *Id.* at 205. Thus, the retaliation claim did not "arise under" Michigan's workers' compensation law.

The court also determined that the retaliation claim was not itself a "workmen's

6

compensation law." *Id.* at 205-208.  The court observed that "whether a retaliatory discharge is a wrong under Michigan law does not depend on the workers' compensation statute, but upon the Michigan courts' recognition of an exception to the employment at-will doctrine for discharges that violate public policy." *Id.* at 207.  In *dicta*, the Sixth Circuit stated that "an independent statutory cause of action for retaliation also might arise if the legislature amended the Act so as to supersede the common law claim by creating an exclusive administrative mechanism for adjudicating these claims and/or circumscribing the available remedies." *Id.* at 207.  "Under current Michigan law, however, the cause of action for retaliatory discharge in violation of the public policy to protect workmen's compensation claimants is not one of Michigan's 'workmen's compensation laws,' but merely one iteration of a common law tort that potentially applies to a myriad of different wrongs in the employment setting." *Id.* at 207.  The Sixth Circuit found that, to determine whether a law is a "workmen's compensation law," a court must "focus on whether the existence of the workers' compensation retaliation claim is necessarily dependent upon the administrative mechanisms and/or remedies of the applicable workers' compensation statute." *Id.* at 208.  Thus, the Michigan retaliation claim was removable "because [its] existence is not necessarily dependent upon the procedures or remedies provided by the [Michigan] Workers' Disability Compensation Act." *Id.* at 208.

In *Nixon v. Waste Mgmt., Inc.*, 156 F. App'x 784, 785 (6th Cir. 2005), the Sixth Circuit determined that a workers' compensation retaliatory discharge claim under Tennessee law did not arise under the TWCL.  Although the Tennessee Supreme Court had found that an anti-retaliation claim was "implicit" in the TWCL, the Tennessee Supreme Court had made clear that the claim was created by the common law, not the TWCL, and that it applied any time an

7

employee was discharged as a result of an employer's violation of a "clear public policy." *Id.* at 787. Because the Tennessee retaliatory discharge cause of action was "a judicial creation," it did not "arise under" the TWCL. *Id.*

*Harper* and *Nixon* concerned whether retaliation claims against a workers' *employer* fell outside the scope of a state workers' compensation statute. Here, the Givens argue that the court should find that third-party claims permitted by § 112 "arise under" the TWCL. The parties agree that this an issue of first impression.

### C. The Tennessee Workers' Compensation Law

The TWCL applies where an employee suffers an on-the-job injury while working for his employer. Originally enacted in 1919, the TWCL "replaced the common law system of tort liability by creating a framework in which employees may recover benefits for injuries arising out of and in the course of employment without regard to fault in exchange for statutory limits on recovery and a prohibition against common law remedies." *Interstate Mech. Contractors, Inc. v. McIntosh*, 229 S.W.3d 673, 679 (Tenn. 2007).[7] Thus, "workers' compensation laws involve a *quid pro quo* in that workers give up certain common law rights *against their employers* in return for a system providing more certain compensation, totally independent of any fault on the part of the employer." *Perry*, 703 S.W.2d at 153 (emphasis added).

When an employee makes a claim against an employer under the TWCL, various

---

[7]*See also Perry v. Transamerica Ins. Grp.*, 703 S.W.2d 151, 153 (Tenn. App. Ct. 1985) ("Workmen's compensation contemplates a substitution of the contractual rights and obligations which normally flow *between worker and employer* with a complete and exclusive statutory scheme based not upon contract but upon status. The relationship of employer and employee itself generates the rights and obligations; the legislation describes the content and extent of those rights and obligations.") (quoting *Noe v. Travelers Ins. Co.* 342 P.2d 976, 977 (1959)) (emphasis added).

8

procedures, rights, and remedial limitations attach as between the employee and the employer. For example, (1) the employee is entitled to compensation without proof of fault, § 50-6-108, (2) the employer may not assert common law defenses, § 50-6-103, (3) the parties must engage in an out-of-court "benefit review conference process provided by the division of workers' compensation," *see, e.g.*, §§ 50-6-203, 50-6-225, and 50-6-240, (4) the employee and employer must abide by various timing requirements and rights associated with the handling and resolution of the employee's claims, *see, e.g.*, §§ 50-6-203(a)(2), and 50-6-203(d), (5) the categories and amounts of damages the employee may recover are limited, the statute prescribes the forms and methods of compensating the employee, and the statute provides a specific formula for compensating the employee's attorney, *see, e.g.*, §§ 50-6-221, 50-6-226(2), and 50-6-229 (lump sum payments); and (6) the employer must comply with certain bookkeeping requirements, *see, e.g., id.* § 50-6-228. The parties also have special rights of appeal through the Tennessee court system, the Tennessee Rules of Civil of Procedure and the Tennessee Rules of Evidence apply to any such court case, any appeal of a trial court decision is directly appealable to the Tennessee Supreme Court, the Tennessee Supreme Court may refer "workers' compensation cases" to a Special Workers' Compensation Appeals Panel, and all "*cases under this chapter* shall be expedited" by, *inter alia*, "[g]iving the cases priority over all cases on the trial and appellate dockets." *See* Tenn. Code. § 50-6-225 (emphasis added). Furthermore, the Tennessee Department of Labor and Workforce Development, Division of Workers' Compensation, has adopted various rules and regulations governing workers' compensation claims.[8] As construed by the Tennessee Supreme Court, the TWCL "is a complete substitute for an employee's

---

[8]The statute contains various other administrative requirements and remedial limitations. *See generally* 20 Tenn. Workers' Comp. Prac. & Proc. § 1:3 (updated Oct. 2012).

9

common law remedies *against an employer* for a work-related injury." *Newman v. Nat'l Fire Ins. Co.*, 786 S.W.2d 932, 935 (Tenn. 1990) (emphasis added).[9]

The TWCL also contains a section entitled "Third Party Actions," which authorizes employees to pursue claims against potentially responsible parties other than the employer. *See* Tenn. Code Ann. § 50-6-112 [hereinafter "§ 112"]. Part (a) of that section provides as follows:

> When the injury or death for which compensation is payable under this chapter was caused under circumstances *creating a legal liability against some person other than the employer* to pay damages, the injured worker . . . shall have the right to take compensation under this chapter, and the injured worker, or those to whom the injured worker's right of action survives at law, may pursue the injured worker's or their remedy by proper action in a court of competent jurisdiction against the other person.

*Id.* § 112 (emphasis added). "The action against third persons contemplated by and provided for by [§ 112] is in tort and includes all manner of relations *creating the duty of the tortfeasor* such

---

[9]On April 29, 2013, the Tennessee General Assembly passed the Workers' Compensation Reform Act of 2013, a law that makes substantial changes to the TWCL. *See* Tenn. 2013 Session Laws, Pub. Ch. 289, TN LEGIS 289 (2013). Those changes will include, *inter alia*, administration of workers' compensation claims exclusively through administrative bodies (including a new Court of Workers' Compensation Claims) rather than in part through the Tennessee trial court system, a provision requiring that the TWCL be interpreted impartially (rather than in favor of the employee), certain changes to the formulas under which benefits are calculated, a requirement that the employee's employment was more than a 50% contributing factor in causing the injury, and new requirements for the selection of treating physicians.

These changes do not impact this court's decision on the issue before it. As an initial matter, all acts of the Tennessee legislature are presumed to operate prospectively unless the legislature indicates otherwise. *In re D.A.H.*, 142 S.W.3d 267, 273 (Tenn. 2004). Furthermore, subject to limited exceptions not relevant here, the amendments to the TWCL are not scheduled to take effect until July 1, 2014. *See* TN Legis 298, at Section 106. Thus, for purposes of the issues presented here, the court applies the TWCL in its current form – not in the form it will take on July 1, 2014. Finally, even if the amendments were appropriately considered here, the substance of those amendments does not change the factors that the court finds persuasive on the issue of whether tort claims against third parties "arise under" the TWCL for purposes of 28 U.S.C. § 1445. In most pertinent part, the reforms do not include any amendments to Tenn. Code Ann. 50-6-112, the provision directly at issue here.

10

as automobile and general negligence cases, products liability cases, medical malpractice cases, and federal torts claims act cases." *Plough, Inc. v. Premier Pneumatics, Inc.*, 660 S.W.2d 495, 497-98 (Tenn. 1983) (emphasis added). The remaining portions of § 112 concern the circumstances in which the employee or the employer may seek to sue a third party, the relationship between the workers' compensation award as an offset against the recovery from the third party, and the apportionment of fees to the employee's and/or employer's attorney.[10]

The provisions in § 112 do not affect the substantive elements of the cause(s) of action against a potentially responsible third party, do not purport to strip the third party of any defenses, and do not limit the type or amount of damages that an employee may recover from that third party. Furthermore, relative to a third-party action, the TWCL does not impose the out-of-court procedures that apply to workers' compensation claims, the special procedures and rules for appeals of workers' compensation cases within the Tennessee courts, or any of the various other rights, remedies, procedures, and limitations that attach to an injured worker's claim against his employer. Thus, subject to § 112's statute of limitations and certain rights related to post-recovery allocation, the TWCL essentially does not change the underlying causes of action by an injured worker against responsible third parties or the manner in which the merits of those causes of action may be litigated.

---

[10] For example, an employee pursuing a third-party claim must do so within one year of the injury, regardless of the statute of limitations that would otherwise apply. *See Lambert v. Invacare Corp.*, 985 S.W.2d 446 (Tenn. Ct. App. 1998) (construing § 112(d)(1)). If the employee does not bring the claim within one year, the right to recover from the third party is assigned to the employer, who essentially may recover up to the amount that the employer was required to pay under the workers' compensation statute. *See* Tenn. Code Ann. § 50-6-112(d)(2). If the employee timely files the action and recovers from the third party, the employer is entitled to a credit up to the amount it paid out, has a lien against the employee's recovery from the third party for that amount, and can intervene in an action to enforce that lien. *Id.* § 112(c).

11

**II.    Application**

Against this backdrop, the Givens argue that their negligence and strict liability claims "arise under" the TWCL for purposes of § 1445(c), either because (1) § 112 "creates" their cause of action by authorizing them to bring their Tennessee tort claims premised on Mr. Givens' workplace injury; and/or (2) because their right to relief necessarily depends on resolving a substantial question under the TWCL. The Givens argue that the TWCL impacts their available remedies, thereby distinguishing their claims from the retaliation claims at issue in *Harper* and *Nixon*. They also argue that language in an unpublished Tennessee Court of Appeals decision characterizing § 112 should control the issue. *See Erie Ins. Co. v. Columbia Nat'l Ins. Co.*, No. M2012-00331-COA-R3-CV, 2013 WL 395982 (Tenn. Ct. App. Jan. 30, 2013).

**A.    "Arising Under" Jurisdiction**

The court finds that the TWCL does not "create" causes of action in an injured worker relative to third parties. Even if the TWCL could be construed as limiting injured workers only to recovery available under the TWCL, *see* § 50-6-108, the TWCL specifically *exempts* from its coverage any claims against responsible third parties in § 112. Section 112 does not "create" causes of action for negligence, strict liability, or any other tort – instead, those causes of action are defined by laws *other than the TWCL*. Thus, the elements of those causes of action and the categories of damages that may be recovered under them are unaffected by § 112.

For example, Mr. Givens' claims for negligence and strict liability are defined by Tennessee common law and statutory law, which articulate the elements of those claims and the remedies available to successful claimants. *See, e.g.*, Tenn. Code Ann. § 29-28-101 *et seq.* (Tennessee Products Liability Act of 1978); *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686,

12

692 (Tenn. 2011) (strict liability for design defect and failure to warn); *Dixson v. Atlantic Soft Drink Co.*, 980 S.W.2d 200, 202 (Tenn. Ct. App. 1998) (citing *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)) (negligence and duty of reasonable care). Thus, even to the extent it exempted Mr. Givens from the exclusive remedies set forth in the TWCL, § 112 did not "create" Mr. Givens' causes of action for negligence and strict liability – Tennessee law otherwise recognized those claims, which are merely "reflected" in the statute. *See Harper*, 392 F.3d at 205. Furthermore, if the Givens' allegations are true and Batavia committed a legal wrong by negligently repairing the ladder and/or rendering it unreasonably dangerous, the legal wrong does not depend on the existence of the TWCL. That is, those legal wrongs are independent of the TWCL and the associated fact that Mr. Givens was entitled to compensation from his employer thereunder. *See id.*; *Nixon*, 156 F. App'x at 787.

Also, as with the retaliation claims at issue in *Harper*, the Givens' claims do not implicate the complex administrative mechanisms, remedial rules, and appellate procedures governing workers' compensation claims by Mr. Givens against UGS. Unlike Mr. Givens' workers' compensation claims against UGS, Mr. Givens is free to sue third parties in an appropriate jurisdiction on any valid legal grounds, without participating in an out-of-court review process and without any statutory limitation on his recoverable damages. *See Harper*, 392 F.3d at 205, 208. Indeed, from Batavia's perspective, the lawsuit is essentially the same as a traditional tort lawsuit against it, save for the fact that Mr. Givens happened to be injured while at work.

Moreover, the TWCL itself plainly contemplates that "cases" under it relate to claims (1) between the employee and the employer (2) within the Tennessee judicial system. *See, e.g.*,

13

Tenn. Code. § 50-6-225 ("[C]*ases under this chapter* shall be expedited" by, *inter alia*, "[g]iving the cases priority over all cases on the trial and appellate dockets.") Moreover, many of the rules governing "cases" under the TWCL could not govern federal courts (nor were they intended to), such as the applicable rules of procedure and evidence in federal court, a federal court's authority to prioritize cases on its own docket, and the federal rights of appeal available to aggrieved parties. These aspects of the statute support the interpretation that a workers' tort case against a third party does not arise under the TWCL.

The court is unpersuaded that language in the unpublished Tennessee Court of Appeals decision in *Erie Insurance* compels a different result. *Erie* involved a procedurally complex dispute between two insurance companies. As best this court can discern from the opinion,[11] the appellate court found that the defendant insurance carrier was entitled to summary judgment on either of two grounds: (1) after the worker was injured on the job, collected workers' compensation from a subcontractor (his immediate employer), and then recovered money from a responsible third party in a separately filed lawsuit, the insurance carrier for the general contractor (the worker's statutory employer) was not liable for excess damages paid out by the third party's insurance carrier in that separate proceeding, regardless of whether the general contractor's insurance policy otherwise covered the third party's actions; and/or (2) the general contractor's insurance policy did not actually cover the third-party actor's negligence in the first place. With respect to the first holding, the appellate court stated as follows:

> The comprehensive [TWCL] extinguished claims for on-the-job injuries that
> Tennessee employees had under the common law and replaced those claims with

---

[11]*Erie Insurance* contains only an abbreviated discussion of the case's complex procedural history and the court's application of the law thereto.

14

exclusive statutory remedies. Tenn. Code Ann. § 108 and *King v. Ross Coal Co.*, 684 S.W.2d 617, 619-20 (Tenn. Ct. App. 1984). However, [§ 112] affords Mr. Brewington [] the right to sue third-party tortfeasors under limited circumstances. Without this express statutory remedy, an action against a third-party tortfeasor, like Mr. White, would not be permissible. Thus, Mr. Brewington's entitlement, if any, to maintain a tort action against Mr. White, and Mr. White's liability, if any, are exclusive products of the workers' compensation statutory scheme. *See* [§ 112]; *see also Queen Ins. Co. Am. v. Ins. Co. of N. Am.*, 455 S.W.2d 149, 152 (Tenn. 1970).

For several reasons, the court finds that this language in *Erie Insurance* does not change the court's analysis here. First, federal law, not a Tennessee intermediate appellate court's characterization of its own laws, controls whether Mr. Givens' claims "arise under" the TWCL for purposes of § 1445(c). Second, the opinion is unpublished and, therefore, provides at most persuasive authority on issues not already addressed in published decisions. *See* Tenn. Sup. Ct. Rules, Rule 4; *see also Grubb & Ellis/Centennial, Inc. v. Gaedeke Holdings, Ltd.*, 401 F.3d 770, 776-77 (6th Cir. 2005). Third, this court does not construe the caselaw citations in *Erie* as supporting the broad propositions for which they are cited, particularly in light of published decisions suggesting a narrower construction of the statute.[12] Fourth, even assuming *arguendo*

---

[12]*King* concerned only whether the TWCL precluded a plaintiff's particular common law cause of action *against his employer* – the *King* court found that it did. 684 S.W.2d at 618-620. The case did not purport to address whether § 108 abrogated all workplace injury claims against third parties. Moreover, § 108 has often been construed in published decisions as reflecting a *mutual* intent to abrogate common law claims and defenses as between an *employee* and the *employer* – without reference to third parties. *See, e.g.*, *Woods v. Harry B. Woods Plumbing Co,. Inc.*, 967 S.W.2d 768, 772 (Tenn. 1998) ("[T]he Act is based on a mutual renunciation of common law rights and defenses."); *Clanton v. Cain-Sloan*, 677 S.W.2d 441, 444 (Tenn. 1984) ("[The TWCL] reflects a careful balancing of the interests of employer and employee."); *Newman*, 786 S.W.2d at 935 (TWCL provides substitute for "employee's common law remedies against an employer"); *Perry*, 703 S.W.2d at 153 (TWCL embodies a "*quid pro quo*" in which "workers give up certain common law rights against their employers"); *see also Davis v. Alexsis, Inc.*, 2 S.W.2d 228, 229 (Tenn. Ct. App. 1999) ("Under the [TWCL], workers' compensation is the exclusive remedy, *unless a third party causes the injury*.") (emphasis added). Also, *Queen Insurance* simply observed, without reference to § 112, that an employer was "entitled to share

15

that the appellate court's language in *Erie Insurance* is consistent with published Tennessee cases, it is not entirely clear to this court what principle the *Erie Insurance* court was addressing and/or whether the referenced broad language was necessary to the court's holdings. Fifth, given that *Erie Insurance* found that summary judgment was also appropriate because the relevant insurance policy did not cover the third-party actor's negligence in the first place, the appellate court's reasoning concerning the exclusivity of remedies against the general contractor (and its insurer) may have been *dicta*. Sixth, the *Erie Insurance* court's statement that § 112 "entitles" a worker to "maintain a tort action" could be construed as consistent with this court's holding that the tort action itself does not "arise under" the TWCL as contemplated by Congress in § 1445(c). Indeed, the *Erie Insurance* court was not purporting to address whether tort claims that the TWCL does not preclude "arise under" the statute. Finally, even if *Erie Insurance* could be construed as addressing whether a third-party tort claim "arises under" the TWCL, this court respectfully adopts a different interpretation for the reasons discussed herein.

Also, the court is not persuaded that the Givens' Amended Complaint demonstrates that determining the Givens' "right to relief" will require resolving a substantial question under the TWCL. *See Harper*, 392 F.3d at 203. Section 112 largely relates to determining the proper parties to the suit and, *after adjudication of the claims*, how the proceeds may be apportioned among the employee, the employer, and their respective attorneys. At most, the Amended Complaint suggests that the court could be asked to allocate a "reasonable attorney's" fee to the Givens' counsel (and perhaps Mr. Givens' former employer's counsel as well) and to credit Mr.

---

in any money recovered from the negligent third party tort-feasor" who had injured the employee, to whom the employer had paid out workers' compensation benefits stemming from a workplace incident. 455 S.W.2d at 359.

16

Givens' employer with a portion of the recovery. Without more, those issues do not suggest that the resolution of the merits of this case will require resolving a substantial question of law under the TWCL. Indeed, the merits of the case presumably will be litigated and adjudicated in substantially the same fashion as any traditional diversity case involving Tennessee negligence and/or strict liability claims.

The history of the TWCL supports the view that third-party claims by injured workers do not "arise under" § 112. As originally enacted in 1919, the TWCL authorized a worker to recover workers' compensation benefits from the employer *or* to pursue claims against a responsible third party, but not both. *Plough*, 660 S.W.2d at 498 (citing *Millican v. Home Stores, Inc.*, 270 S.W.2d 372 (1954)). In 1949, the General Assembly amended the statute to include a substantially similar precursor to § 112, which "was undoubtedly enacted for the purpose of changing this situation by (1) allowing the injured part[y] to receive from the employer the amount awarded by the statute and (2) at the same time assert his claim against the third party as an alleged wrongdoer for the full measure of damages suffered with (3) the employer having a lien upon the recovery or settlement to the extent of the amount paid by such employer to the employee . . . under the provisions of the [TWCL]; and (4) if the employee . . . had not asserted claim[s] against the third party within one year, then, by way of subrogation, the right is given the employer to recover from such third party damages in an amount not to exceed the amount paid or payable by that employer to its employee, or dependents." *Millican*, 270 S.W.2d at 374. Thus, as originally enacted, the TWCL permitted the employee to pursue third-party claims that state or federal law *already recognized* – with the caveat that doing so would forfeit the right to workers' compensation. The later amendments to the TWCL amended the law

17

to clarify that a worker did not forfeit the right to recover workers' compensation under the TWCL by pursuing otherwise valid claims against a third party, in whom existing law (*i.e.*, laws other than the TWCL) "creat[ed] a legal liability" relative to the underlying incident. *See* § 112.

In sum, the court finds that the Givens' claims do not "arise under" § 1445(c).

### B. Policy Concerns

Refusing to exercise jurisdiction over this type of case would not comport with the language of § 1445(c) and would not further the statute's purposes. Section 1445(c) applies only to claims "arising under" a state's "workmen's compensation laws." If Congress meant to prevent removal of any claim "arising out of a workplace injury," it could have done so. This suggests that Congress did not intend to preclude removal of *any and all* claims related to workplace injuries; instead, it only precluded claims that arise under workers' compensation laws as Congress understood the general features of such laws at the time.

This is not the type of case that Congress was concerned about when it passed § 1445(c). Here, the Givens' third-party tort claims against Batavia do not implicate any of the traditional indicia of workmen's compensation schemes, such as no-fault recovery, caps on remedies, and expeditious administrative handling of cases. Furthermore, adjudicating Tennessee common law claims by an injured worker against a responsible third party (*i.e.*, an entity not the employer) does not threaten to clog federal courts with workers' compensation cases. Indeed, Mr. Givens already recovered workers' compensation benefits in a separate proceeding (in some forum other than federal court), unimpeded by the filing of this lawsuit against Batavia. Federal courts can handle cases such as these without embroiling themselves in the arcana of Tennessee's statutory method for compensating injured employees and without affecting the efficient administration of

18

Tennessee's workers' compensation scheme. Denying removal of this case would not facilitate any policy interest animating § 1445(c).

In sum, the court finds that the Givens' claims do not fall within the exception to diversity removal set forth in § 1445(c). Therefore, removal of this case by Batavia based on diversity jurisdiction was proper and the Motion to Remand will be denied.

## **CONCLUSION**

For the reasons stated herein, the Givens' Motion to Remand will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

19

Case 3:13-cv-00300   Document 10   Filed 05/20/13   Page 19 of 19 PageID #: 115